**474**

Olaf M. ENOKSEN
v.
THE F/V MARY E. D'EON, her
engines, etc.

LOVE'S FISHERIES, Inc.
v.
THE F/V PORPOISE, her engines, etc.

Nos. 55–53, 56–43.

United States District Court
D. Massachusetts.

March 13, 1957.

Seymour P. Edgerton, Bingham, Dana & Gould, Boston, Mass., for plaintiff.

Leonard E. Perry, W. B. & L. E. Perry, New Bedford, Mass., for defendant.

FORD, District Judge.

These two cases arise out of a collision between two fishing vessels in the Pollock Rip Channel at about 10:30 a. m. on October 15, 1954. Both vessels, along with other fishing vessels, had been fishing near George's Bank on the previous day, when hurricane warnings caused these boats to cease fishing and return to port. The two vessels here were both bound for their home port of New Bedford. Their course took them in a westerly direction through the Pollock Rip Channel. The channel is about 3½ miles long and about 400 to 500 yards wide between the lines of buoys which mark it.

The Mary E. D'Eon was the first of the two ships to reach the channel on the morning of October fifteenth. The sea was calm at the time. According to the testimony of Captain Love of the D'Eon there was a heavy fog which limited visibility to about 200 feet. The D'Eon started through the channel close to the line of buoys along the south side. After passing No. 3 buoy, the vessel missed No. 5 buoy, which was next in line on the south side of the channel. Another buoy was sighted which Love believed was No. 8 buoy on the north side, and which in fact was No. 8 buoy. Being unable to see the number on the

buoy as he passed it, he threw his engine out of gear and let the tide carry his boat back while he sent his mate to the stern to make certain of the number. The D'Eon swung around to a position where it was headed south with its stern close to No. 8 buoy.

Meanwhile the Porpoise had entered the channel at the same time as two other fishing vessels and all three were proceeding through the channel together. The Elizabeth N. was on the north, the Porpoise abreast of it and about 125 to 150 feet to the south, and the Doris Gertrude about an equal distance to the south of the Porpoise and slightly behind the other two. They were traveling through the channel at a speed of about 8 knots as they approached No. 8 buoy and the D'Eon.

Both the Porpoise and the Elizabeth N. sighted the D'Eon as they approached. The captain of the Porpoise testified that he saw the D'Eon when it was still 200 yards ahead. Both the Elizabeth N. and the Porpoise on seeing the D'Eon swung to starboard and then straightened out in the direction of the channel. In addition the Porpoise slowed its speed and gave a single whistle blast as a signal.

The captain and crew of the D'Eon testified that they did not see the Porpoise until they saw the three ships heading out of the fog about 200 or 250 feet away. Before this they had heard a whistle to the east. Captain Love's version of what he did then is that he threw his boat into gear, swung his wheel hard to port bringing the D'Eon around facing east, turning sharply on her heel with scarcely any forward motion, and then put the vessel astern, bringing it almost to a stop when it hit the Porpoise, which was heading north. At no time did he give any signal with his whistle.

The Porpoise's version of the D'Eon's movements was that it went through a circling movement, moving south when first sighted, then swinging around to move east and then north before it hit the Porpoise. The D'Eon hit the Porpoise on the port side at a point about 20 feet back from the bow and abreast of the gallows frame. It came up from the rear to strike the Porpoise at an angle of about 45 degrees.

The evidence supports Captain Enoksen's version of the movements of the D'Eon. The captain of the Elizabeth N. testified that he saw the D'Eon make a circling movement, rather than swinging sharply on her heel, and that it had circled around so that it was headed north when it hit the Porpoise. Captain Love testified that when the D'Eon passed No. 8 buoy it was about 30 feet from it. He further testified that the tide was then flowing northeast and that it was this tide which had carried the D'Eon from the south side of the channel which he was trying to follow to the north side near No. 8 buoy and that he had thrown the boat out of gear after passing the buoy to allow the tide to carry it back closer to the buoy. While the D'Eon was out of gear, it would have drifted toward the north line of the channel rather than toward the center. If it moved south toward the center of the channel, it must have done so under the power of its own engine. However, it did move south since at the time of the collision the Porpoise was 150 feet south of the north line of the channel. This is corroborated by the testimony of the captain of the Elizabeth N., which was between the Porpoise and the north line of the channel, but with clearance of both sides. The D'Eon could not merely have swung sharply about a point close to No. 8 buoy but must have circled at least 150 feet into the channel.

The D'Eon was at fault in making this circling movement and this fault was the cause of the collision. If it had moved out into the channel turning so that it was headed either east or west and then straightened out its course, it would have made itself a narrower target and given the Porpoise the maximum opportunity to pass it. When it continued its circling movement, it brought itself back across the course of the Porpoise which would otherwise have cleared it safely.

476

■■ Vessels navigating in the Pollock Rip Channel are subject to the Inland Rules, 33 U.S.C.A. §§ 151–231. When the vessels here sighted each other, the D'Eon was headed on a course crossing that of the Porpoise at right angles, from the starboard to the port side of the Porpoise. Under Article 19, 33 U.S.C.A. § 204, the Porpoise had to keep out of the way of the D'Eon, and under Article 22, 33 U.S.C.A. § 207, it had to avoid crossing ahead of the D'Eon. Hence it followed the proper course in turning to starboard so as to avoid the collision by passing astern of the D'Eon. Under Article 21, 33 U.S.C.A. § 206, the D'Eon as the privileged vessel was required to keep her course and speed. This it failed to do by going through the circling maneuver which brought it into contact with the Porpoise.

■ The only ground upon which it is contended that the Porpoise was at fault is that its speed was excessive in view of the poor visibility in the fog. The Porpoise was doing 8 knots as it went through the channel. The important question is whether the visibility at the time was so low as to make this speed excessive. Captain Love says the visibility in the fog was only about 200 feet, and his lookouts said they did not see the Porpoise until it was no more than 250 feet away. On the other hand, Captain Enoksen says visibility at the time was much greater and that he saw the D'Eon when it was 200 yards away and then gave a whistle signal. Captain Love admitted hearing this whistle before he saw the Porpoise. The visibility must therefore have been greater than the 250 feet which separated the boats when the D'Eon first saw the Porpoise since earlier, while the boats were still farther apart, Captain Enoksen from the Porpoise saw the D'Eon and gave his signal. It is also significant that Captain Love said his speed through the channel had been 6 knots and his mate said it was 8 knots as they approached No. 8 buoy. This indicates that visibility was not so low at the time as to make Captain Love feel 6 or 8 knots was an excessive speed. Finally the speed of the Porpoise was such that after it had seen the D'Eon, it would have been able to pass it safely except for the fact that the D'Eon circled back into the course of the Porpoise. In fact, even in spite of this maneuver the Porpoise almost passed safely.

The conclusion is that the Porpoise was not at fault, that the Mary E. D'Eon was at fault in its circling maneuver which brought it back across the course the Porpoise properly took to avoid a collision and that this fault of the Mary E. D'Eon was the cause of the collision.

In No. 56–43–F the libel is to be dismissed. In No. 55–53–F the case will be referred to a commissioner for assessment of damages.